UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NICK WINSTEAD, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:13CV887 ACL |
| ) | |
| IAN WALLACE,[1] ) | |
| ) | |
| Respondent. ) | |

# MEMORANDUM AND ORDER

This matter is before the Court on the Petition of Nick Winstead for a Writ of Habeas Corpus under 28 U.S.C. § 2254.

## I. Procedural History

Winstead is currently incarcerated at Southeast Correctional Center in Charleston, Missouri, pursuant to the sentences and judgments[2] of the Circuit Court of St. Louis County, Missouri. (Respt's Ex. A at 98-102.)

The convictions at issue in this case result from four separate cases. In Case Number 09SL-CR08218, the State charged Winstead with one count of burglary in the first degree, two class C felonies of stealing, and one misdemeanor of stealing for events occurring on October 9, 2009. (Respt's Ex. A at 9-10, 12-15.) In Case Number 10SL-CR00147, the State charged Winstead with one count of attempted burglary in the second degree, three counts of burglary in

---

[1]Winstead has been transferred and is now confined at the Southeast Correctional Center in Charleston, Missouri; consequently, the Warden there, Ian Wallace, is substituted as the proper Respondent. *See* Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts.

[2]Winstead challenges his plea and sentence in four separate cases in his Petition. Because the state court held one plea and one sentencing hearing for all four cases, and Winstead raises the same challenge to the validity of all sentences, this Court will consider the challenges to the multiple convictions together in this case.

the second degree, and three counts of the class C felony of stealing for events occurring between September 14, 2009, and September 16, 2009. *Id.* at 16-18, 52-55. In Case Number 10SL-CR00184, the State charged Winstead with three counts of burglary in the second degree and five counts of the class C felony of stealing for events occurring on September 25, 2009, October 9, 2009, and October 13, 2009. *Id.* at 18-21, 73-76. In Case Number 10SL-CR03525, the State charged Winstead with two counts of burglary in the second degree, one count of the class C felony of stealing, and two counts of attempted burglary in the first degree for offenses occurring on September 3, 2009, and October 8, 2009. *Id.* at 21-23, 92-95.

On July 12, 2010, Winstead entered a "blind" plea of guilty to each of the above counts with no agreement about the sentence that the court might impose. *Id.* at 12-23. The court ordered the State Board of Probation and Parole to submit a Pre-Sentence Investigation/Sentencing Assessment Report ("SAR"), and deferred sentencing August 24, 2010. *Id.* at 13. The plea court also granted Winstead's request that he be screened for placement in a long-term drug treatment program. *Id.* at 15. On August 24, 2010, the plea court sentenced Winstead to concurrent terms of eighteen years for the burglary in the first degree count, fifteen years for each of the class C felony stealing counts, fifteen years for each of the burglary in the second degree counts, fifteen years for each of the attempted burglary in the first degree counts, and seven years for the attempted burglary in the second degree count, for a total sentence of eighteen years imprisonment. *Id.* at 27-29.

Winstead filed a Motion to Withdraw Guilty Plea on August 31, 2010. *Id.* at 125. Winstead argued that he did not understand the terms of his blind plea. *Id.* He claimed that he believed that, if he was approved for the long-term drug treatment program and assigned a bed date, he would be given a chance to complete the long-term drug treatment program. *Id.* The

court denied Winstead's Motion, after holding a hearing at which Winstead and plea counsel testified.  *Id.* at 33-36.

On November 15, 2010, Winstead filed a *pro se* Motion to Vacate, Set Aside or Correct the Judgment or Sentence pursuant to Mo.S.Ct.Rule 24.035.  *Id.* at 107-19.  On March 16, 2011, after appointment of counsel, Winstead filed an Amended Motion to Vacate, Set Aside or Correct Judgment and Sentence and Request for Evidentiary Hearing.  *Id.* at 130-44.  Winstead argued that he was denied effective assistance of counsel because plea counsel advised him that if he entered blind guilty pleas, he would receive long-term institutional drug treatment.  *Id.*  Winstead also argued that the plea court lacked authority to sentence him as a prior and persistent offender because the State failed to prove his prior convictions.  *Id.*  On November 10, 2011, the motion court denied Winstead's motion and his request for an evidentiary hearing.  *Id.* at 147-53.  The court held that Winstead's allegations were refuted by the record.  *Id.* at 151-52.

In his single point on appeal from the denial of post-conviction relief, Winstead argued that he was denied his right to effective assistance of counsel because plea counsel induced him to plead guilty by convincing him the court would order long-term drug treatment, provided Winstead qualified for it, following a blind plea.  (Respt's Ex. B at 13.)  On November 13, 2012, the Missouri Court of Appeals affirmed the denial of post-conviction relief.  (Respt's Ex. D.)

On May 6, 2013, Winstead, *pro se*, filed the instant Petition for a Writ of Habeas Corpus. (Doc. 1.)  In his single ground for relief, Winstead argues that he received ineffective assistance of counsel rendering his guilty pleas involuntary.  *Id.* at 5.  Winstead contends that, based on advice from counsel, he had a mistaken belief that he was pleading guilty in return for a sentence to the State's long-term drug treatment program.  *Id.*

On June 28, 2013, Respondent filed a Response to Order to Show Cause, in which he argues that the Petition should be denied because Petitioner's claim fails on its merits.  (Doc. 8.)

Respondent argues that Winstead's claim is based on the assumption that the record demonstrates that he was eligible to be placed in the long-term treatment program, yet Winstead failed to include the SAR as part of the record on post-conviction appeal. Respondent argues that, without the SAR, "this Court is left to infer what that report said about the Long-Term Treatment Program from ambiguous comments in the record," and Winstead is unable to show that the state court acted unreasonably in finding that Winstead could not show prejudice. (Doc. 8 at 11.) Respondent noted that, based on the discussion at the sentencing, "it appears that the sentencing assessment report recommended a prison sentence rather than placement in the Long-Term Treatment Program." *Id.* at 8.

In response to this argument, Winstead filed a Motion to Order Production of the SAR, claiming that Respondent had raised the issue of the contents of the SAR and he had been unable to obtain the SAR on his own from the state courts. The undersigned granted Winstead's Motion to Order Production of the Sentencing Assessment Report. (Doc. 17.) Respondent complied with the Court's Order and filed a copy of the SAR. (Doc. 18-1.) Respondent also filed a Supplemental Response to Order to Show Cause (Doc. 18), to which Winstead has filed a Reply (Doc. 19).

## II. Facts

The following exchange occurred at Winstead's plea hearing:

THE COURT: You want to give up all those rights and plead guilty here today?

[Winstead]: Yes, ma'am.

THE COURT: My understanding is that guilty plea is not pursuant to a recommendation with the state; is that correct?

[Winstead]: Yes, ma'am.

THE COURT: Okay. So it is what we call a blind plea?

[Winstead]: Yes, ma'am.

THE COURT: And you understand your lawyer explained that to you what that was?

[Winstead]: Yes, ma'am.

THE COURT: You understand that you will be participating in a Presentence Investigation or Sentencing Assessment Report?

[Winstead]: Yes, ma'am.

THE COURT: Okay. And then they will, the State Board of Probation and Parole, will participate in that with you and will then give a recommendation to the state.

[Winstead]: Yes, ma'am.

THE COURT: I mean, recommendation to the Court.

[Winstead]: Yes, ma'am.

THE COURT: And that the state has already made a recommendation; correct?

[Winstead]: Yes, ma'am.

THE COURT: Okay. You understand that any recommendation the state makes is not binding upon this Court?

[Winstead]: Yes, ma'am.

THE COURT: And I could impose any sentence allowable within the range of punishment permitted by law.

[Winstead]: Yes, ma'am.

(Respt's Ex. A at 13.)

The plea court then proceeded with the guilty pleas in each of the four cases. After discussing the factual basis of each charge, the court asked Winstead if anyone had made any promises to him about the sentence that would be imposed. *Id.* at 14, 17, 20, 22. Winstead responded each time that no one had made any promises to him. *Id.* The court also asked

Winstead if he understood that no one could promise him what his sentence would be. *Id.* Winstead testified that he understood this. *Id.*

The court next asked Winstead if he understood that "no matter what the Sentencing Assessment Report or Presentence Investigation comes back with you can't withdraw your plea of guilty at that time." *Id.* at 21. Winstead testified that he understood this. *Id.*

After accepting Winstead's pleas of guilty, the court directed the State Board of Probation and Parole to submit a Presentence Investigation Report, including a screening "to determine defendant's fitness to enter into a long term treatment program." *Id.* at 23.

At the sentencing hearing, the court indicated that it had received and shared with the State and counsel for Winstead the Presentence Investigation or SAR. *Id.* at 24. At the beginning of the hearing, Winstead's counsel requested that the court place him in the long-term drug treatment program. *Id.* Three of the victims of the burglaries to which Winstead pleaded guilty provided testimony regarding the impact of the crimes. *Id.* at 25-26. Winstead's counsel then again requested that the court place Winstead in the long-term drug treatment program. *Id.* at 26. Defense counsel acknowledged that the court "has some issues with his lengthy record and concerns about whether he could benefit from this program after having had prior programs." *Id.* The prosecutor responded that "the Presentence Investigation says all what needs to be said about Mr. Winstead's past." *Id.* He indicated that the State was "still asking for the prior recommendation of twenty years in the Missouri Department of Corrections." *Id.*

The court questioned Winstead, who testified that he had participated in drug treatment programs "maybe three" times. *Id.* He stated that one of those programs was an inpatient treatment program. *Id.* Winstead then provided a statement, in which he stated that he was sorry for his crimes and indicated that he had a drug problem. *Id.*

The court indicated that it had reviewed the SAR in depth, and stated as follows to Winstead:

> And of concern to me, is your history of times you have been out on probation or parole and unable to complete that successfully; your prior drug treatment. I reviewed the victim impact statements that they have collected; some of which have testified and you have heard here today and some of which are not here today.
> The Missouri Department of Corrections Board of Probation and Parole has arranged and it has recommended with the mitigating factor, had you qualified for that, of twelve years in prison; presumptively fifteen year sentence, presumptive sentence and aggravating twenty year prison sentence.
> I have heard arguments by both defense counsel and the state. And so if there is—if no one has any legal reason why sentence should not be pronounced we will proceed.

*Id.* at 27. The court sentenced Winstead to a total of eighteen years imprisonment. *Id.* at 27-29.

The court then questioned Winstead as follows regarding the assistance provided by counsel and his understanding of the proceedings:

> THE COURT: And did your attorney advise you as to all aspects of the case including all of your legal rights?
>
> [Winstead]: Yes, ma'am.
>
> ***
> THE COURT: Has your attorney done everything you have asked him to do in this case?
>
> [Winstead]: Yes, ma'am.
>
> THE COURT: Did he do anything you specifically told him not to do?
>
> [Winstead]: No, ma'am.
>
> THE COURT: Overall are you satisfied with the services he has rendered to you?
>
> [Winstead]: Yes, ma'am.
>
> THE COURT: Okay. And you have had no problem understanding these proceedings as they have gone along; is that correct?
>
> [Winstead]: No, ma'am—yes, ma'am.

> THE COURT: So that is correct you haven't had concerns about understanding what has happened?
>
> [Winstead]: That is correct.
>
> THE COURT: You haven't had any concerns about your lawyer; is that correct?
>
> [Winstead]: Yes, ma'am.
>
> THE COURT: And the sentence that I imposed was not pursuant to a plea agreement with the state; is that correct?
>
> [Winstead]: Yes, ma'am.
>
> THE COURT: And you heard me indicate to you what the Sentencing Assessment Report recommended between the twelve and twenty years; is that correct?
>
> [Winstead]: Yes, ma'am.

*Id.* at 29-30. The court found that no probable cause existed that Winstead received ineffective assistance of counsel. *Id.* at 30.

At the hearing on Winstead's Motion to Withdraw Guilty Plea, plea counsel testified as follows:

> While I understand that the Court went through a very detailed explanation at Mr. Winstead's plea of what a blind plea was, I want to indicate to the Court that I do believe that Mr. Winstead thought at the time of his plea that the only thing he was really taking a chance on was whether he would be approved for the long-term drug treatment program.
> I don't think he anticipated a situation where he would be approved after screening for the long-term drug treatment program, but then the Court would not give it to him. So I do feel that I have some responsibility for not making sure that Mr. Winstead clearly understood that.

*Id.* at 33. The prosecuting attorney responded as follows:

> As I recall, Mr. Winstead entered pleas of guilty blind to the Court on all the files and all the counts…A pre-sentence investigation was ordered, and it was determined he would be screened for the long-term treatment program; however, screening does not guarantee sentencing to the long-term treatment program.
> Mr. Winstead was told by the Court at the time of the plea and the sentencing that you would not be bound by the State's recommendation.
> He was still sentenced in the range of punishment to a lesser sentence than what the State recommended, by the way. And Mr. Winstead at this time just

doesn't like what he was sentenced to and is trying to go back and undo or unring the bell. That's not a basis to withdraw his guilty plea.

*Id.* at 33-34.

Winstead testified that he "was under the impression that if I got screened and approved for it, that I'd get it." *Id.* at 34. The court reminded Winstead of his testimony during the plea hearing that no one had promised him what his sentence would be. *Id.* The court explained that the SAR "came back with a lot of information that I actually did not have when I accepted your plea and prior to sentencing." *Id.* at 35. The court stated: "I think I used the pre-sentence investigation appropriately, made a determination on the sentence." *Id.* The court found that Winstead had failed to demonstrate a manifest injustice warranting the setting aside of the pleas. *Id.* at 34-35.

### III. Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed Section 2254(d) in *Williams v. Taylor*, 529 U.S. 362 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion

opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Id.* at 405. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." *Id.* Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 410. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410.

### IV. Winstead's Claim

Winstead argues that he received ineffective assistance of counsel rendering his guilty pleas involuntary. Specifically, Winstead contends that, based on advice from plea counsel, he had a mistaken belief that he was pleading guilty in return for a sentence to the State's long-term drug treatment program. This is the same claim Winstead raised in the post-conviction proceedings.

The motion court rejected Winstead's claim, holding that Winstead's testimony at the plea hearing revealed that he knew that the court could impose any sentence allowable by law within the range of punishment permitted by law, and that any recommendation by the State or in the SAR was not binding upon the court. (Respt's Ex. A at 151.) The court further found that Winstead stated under oath that no one had made any promises regarding what sentence he would actually receive, and that he was satisfied with the services of his counsel, even after he was sentenced. *Id.* at 152.

The Missouri Court of Appeals held as follows:

> At the beginning of the plea hearing, Movant assured the court that he understood he was pleading blind and not pursuant to the State's recommendation. Movant also understood that he would participate in a SAR, based upon which the Board would recommend a sentence, and the court 'could impose any sentence allowable within the range permitted by law.' Additionally, Movant testified at least four times and that no one had made him any promises to induce him to plead guilty and he understood that no one could promise him what his sentence would be. Finally, when the plea court reiterated that it was not bound by any recommended or requested sentence, Movant stated that he understood. Based on the above, we conclude that the record refutes Movant's claim that counsel promised him that, if he entered a blind guilty plea, the court would sentence Movant to long-term drug treatment. See, e.g., Dorsey, 115 S.W.3d at 845.
>
> Movant contends that the court's 'profuse warnings about its sentencing discretion did not render [Movant's] belief in his lawyer's advice unreasonable as a matter of law.' We disagree. Given the court's repeated warnings about its sentencing discretion, coupled with Movant's numerous statements that no one had made him any promises to induce him to plead guilty and no one could promise him a specific sentence, Movant's alleged belief that he would receive long-term drug treatment was unreasonable. Furthermore, in addition to being reasonable, a movant's mistaken belief must be based upon a positive representation by counsel. Dorsey, 115 S.W.3d at 845. As previously stated, the record refutes Movant's claim that plea counsel promised him he would be sentenced to long-term drug treatment.
>
> Movant also argues that the court's inquiries were not sufficiently specific to refute his claim that he reasonably believed the court would sentence him to long-term treatment. Statements made by a movant refute his ineffective assistance of counsel claims if the questions and responses were specific enough to refute conclusively the movant's allegations. Stubbs v. State, 171 S.W.3d 139, 142 (Mo.App.W.D. 2005) (internal quotation omitted). The plea court repeatedly asked Movant whether anyone had made Movant any promises to induce him to plead guilty and whether Movant understood that no one had the authority to promise him what his sentence would be. We conclude that the plea court's questions were specific enough to elicit answers that directly refuted Movant's claims that counsel assured him that, if approved, the court would sentence Movant to long-term drug treatment. See, e.g. Burnett, 311 S.W.3d at 818.

(Respt's Ex. D at 8-9.)[3]

As previously noted, Respondent has filed a copy of the SAR pursuant to this Court's Order. Respondent, however, argues that this Court should not consider the SAR in its evaluation of whether the Missouri Court of Appeals acted unreasonably because the SAR was

---

[3] The appellate court noted earlier in its opinion that Winstead "has failed to provide this court with evidence that the Board did, in fact, approve Movant for long-term drug treatment, thereby violating his duty to prepare and file a complete record on appeal." (Respt's Ex. D at 6, fn. 1.)

not part of the record before that court. Respondent contends that this Court need not reach the actual contents of the SAR because the Missouri Court of Appeals reasonably determined that the record refuted Winstead's claim that he pleaded guilty in reliance upon an understanding that he was guaranteed long-term treatment if it was recommended in the SAR. Finally, Respondent argues that the SAR does not support Winstead's position. Specifically, Respondent notes that, while the availability of a bed in a long-term drug treatment program was noted in the section titled "Offender Management Recommendations," the ultimate recommendation contained in the "Conclusion" section was as follows: twelve years imprisonment as the mitigating sentence, fifteen years imprisonment as the presumptive sentence, and twenty years imprisonment as the aggravating sentence. (Doc. 18-1 at 11-12.)

In *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), the Supreme Court held that the two-pronged *Strickland* test applies to challenges to guilty pleas on grounds of ineffective assistance of counsel and that, to prevail, a habeas petitioner must show that his attorney's performance "'fell below an objective standard of reasonableness,'" and that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58-59 (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)).

Here, Winstead testified that he understood that his guilty pleas were not pursuant to a recommendation with the State and that any recommendation from the State was not binding on the court. Winstead was informed of the sentences he could receive under each count to which he pleaded guilty, and testified that he understood that the court could impose any sentence allowable within the range of punishment permitted by law. Winstead further testified that no one had made any promises to him about the sentence that would be imposed, and that he understood no one could promise him what his ultimate sentence would be. Winstead's representations during the plea hearing carry a strong presumption of verity and pose a

"formidable barrier to any subsequent collateral proceedings." *Nguyen v. United States,* 114 F.3d 699, 703 (8th Cir. 1997) (citation omitted). Winstead testified at the sentencing hearing that he was satisfied with the services provided by plea counsel. Significantly, Winstead did not inform the court at that time of his belief that he was supposed to be placed in the long-term drug treatment program.

Winstead testified at the plea hearing that he understood that he would not be able to withdraw his pleas "no matter what the Sentencing Assessment Report or Presentence Investigation comes back with." (Respt's Ex. A at 21.) The court explained to Winstead at the sentencing hearing that, as a result of the SAR, it had concerns about Winstead's criminal history and his multiple failed attempts at drug-treatment programs. The court also took into consideration the multiple victim impact statements. The court explained to Winstead that the Board of Probation and Parole recommended a mitigating sentence of twelve years imprisonment, a presumptive sentence of fifteen years imprisonment, and aggravating sentence of twenty years imprisonment. Winstead was sentenced within this range and, notably, was sentenced below the State's recommended sentence of twenty years.

Considering Winstead's statements at the plea and sentencing hearings, the state courts were reasonable in finding that Winstead received effective assistance of counsel and voluntarily, knowingly, and intelligently pleaded guilty. *See Nelson v. Hvass,* 392 F.3d 320, 323–24 (8th Cir. 2004) (holding that where habeas petitioner was informed at guilty plea hearing as to what his sentencing exposure was, state courts' finding that he did not base his decision to plead guilty on his attorney's alleged misstatements on the likely sentencing consequences if he pleaded guilty instead of going to trial was not an unreasonable determination of the facts); *Wilcox v. Hopkins,* 249 F.3d 720, 724-75 (8th Cir. 2001) (rejecting claim of ineffective assistance based upon counsel's alleged misinformation as to likely sentencing consequences of pleading guilty where

the state court advised petitioner of applicable minimum and maximum sentence); *Dunn v. Wyrick,* 679 F.2d 731, 732–33 (8th Cir. 1982) (rejecting habeas petitioner's claim that plea counsel was ineffective for, among other things, misleading petitioner into believing he would receive a certain sentence, in light of petitioner's testimony at plea hearing that he was satisfied with counsel's performance).

The United States Supreme Court has made clear that, "[a]lthough state prisoners may sometimes submit new evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage them from doing so." *Cullen v. Pinholster,* 563 U.S. 170, 186 (2011). Provisions like §§ 2254(d)(1) and (e)(2) ensure that "[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Id. (*quoting *Williams v. Taylor,* 529 U.S. 420, 437). The undersigned allowed Winstead to obtain the SAR due to his representations that he had exercised due diligence in attempting to obtain this evidence. After reviewing the record, the Court finds that the content of the SAR is irrelevant to the disposition of the Petition. The Missouri Court of Appeals reasonably determined that the record before it refuted Winstead's claim that he pleaded guilty in reliance upon an understanding that he was guaranteed long-term treatment if it was recommended in the SAR.

Accordingly, the Petition will be denied.

## V. <u>Certificate of Appealability</u>

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues

deserve further proceedings. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). In this case, Jefferson has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, no Certificate of Appealability shall be issued.

### ORDER

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied** and be **dismissed with prejudice** by separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Petitioner be denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 9th day of August, 2016.